# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MATTHEW JOSHUA KELLER,

        Defendant-Appellant.

UNPUBLISHED
January 25, 2018

No. 334123
Wayne Circuit Court
LC No. 16-000298-02-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

AARON MICHAEL DENLAR,

        Defendant-Appellant.

No. 335254
Wayne Circuit Court
LC No. 16-000298-01-FC

---

Before: CAMERON, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

Defendants Matthew Keller and Aaron Denlar were tried jointly before a single jury and both were convicted of unarmed robbery, MCL 750.530. The jury acquitted Keller of additional charges of felonious assault, MCL 750.82, and possession of a firearm during commission of a felony, MCL 750.227b. The trial court sentenced both defendants to 3 to 15 years in prison. Keller appeals as of right in Docket No. 334123, and Denlar appeals as of right in Docket No. 335254.[1] We affirm defendants' convictions, but vacate defendants' sentences and remand for resentencing.

---

[1] Defendants were also tried with a third codefendant, Joshua Bailo, who also was convicted of unarmed robbery and sentenced to 3 to 15 years' imprisonment. Bailo filed an application for a

-1-

Defendants' convictions arise from an incident involving Timothy Seguin, the victim. Seguin worked in the construction trade. Seguin had known defendant Denlar since high school and had met defendant Keller along with codefendant Joshua Bailo and a fourth person, Mike Galas through Denlar. Bailo, Kellar, and Galas had done work for Seguin in his business. At some point before October 26, 2015, Seguin withheld pay from Keller and Bailo because they left a job site for several hours when they should have been working, and because they ruined Seguin's tiling tools by failing to clean them. On October 26, 2015, Denlar invited Seguin to Denlar's house for a social visit. When Seguin arrived, Keller, Bailo, and Galas were already there, along with Denlar. After directing Seguin to a seat in the corner, farthest from the outside door, the group confronted Seguin about the withheld payment. Seguin felt uncomfortable, so he tried to leave. As Seguin got up, Bailo jumped on top of him and Denlar told him that they all had pistols. Seguin heard someone say, "Run his pockets." Seguin later attributed this statement to Denlar. Seguin was able to fight off Bailo and leave the house, but when he went to his truck, he realized that his keys were still in the house. The four men came outside and again confronted Seguin near his truck. Bailo had his truck keys and used the key fob to lock his truck. Seguin and Galas discussed resolving the dispute by splitting the difference of the withheld payment. According to Seguin, he then saw Keller approaching with a gun. He heard the sound of a semiautomatic pistol being racked and then heard gunshots. Seguin ran from the house into an alley and called the police. When the police arrived, they searched the area for spent shell casings, but none were found, and Seguin's truck was missing. The truck was later found one block away; it had been burned and was not salvageable.

The jury found Keller, Denlar, and Bailo not guilty of armed robbery, but convicted them of the lesser included offense of unarmed robbery. The robbery charge arose from the assault inside the house. The jury acquitted Keller of additional charges of felonious assault and felony-firearm. Defendants were not charged with any offense pertaining to the theft and destruction of Seguin's truck.

## I. DOCKET NO. 334123 (DEFENDANT KELLER)

### A. SUFFICIENCY OF THE EVIDENCE

Defendant Keller argues that his conviction for unarmed robbery was not supported by sufficient evidence. "This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Perry*, 317 Mich App 589, 599; 895 NW2d 216 (2016). In reviewing the sufficiency of evidence to support a conviction, this Court reviews the evidence "in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt." *Id*. "This Court will not interfere with the jury's role of determining the

---

delayed appeal in Docket No. 334999. This Court remanded "for further proceedings to establish a factual basis for the imposition of $1,300 in court costs or to alter that amount if appropriate," but otherwise denied his application "for lack of merit in the grounds presented." *People v Bailo*, unpublished order of the Court of Appeals, entered October 27, 2016 (Docket No. 334999).

weight of evidence or the credibility of witnesses." *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999). The reviewing court must draw all reasonable inferences in support of the jury's verdict. *People v Bulls*, 262 Mich App 618, 623-624; 687 NW2d 159 (2004).

Keller was convicted of violating MCL 750.530, which provides:

> (1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

> (2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

Before this statute was amended in 2004, the offense of robbery required a completed larceny. *People v Williams*, 491 Mich 164, 169; 814 NW2d 270 (2012). In *Williams*, our Supreme Court explained that, in amending the statute, "the Legislature demonstrated a clear intent to remove the element of a *completed* larceny, signaling a departure from Michigan's historical requirement and its common law underpinnings." *Id*. at 172. "Accordingly, an attempted robbery or attempted armed robbery with an incomplete larceny is now sufficient to sustain a conviction under the robbery or armed robbery statutes, respectively." *Id*.

In *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010), this Court stated that "[t]o be guilty of unarmed robbery, a defendant must (1) feloniously take the property of another,[2] (2) by force or violence or assault or putting in fear, and (3) be unarmed." The prosecutor's theory at trial was that Keller, acting in concert with Denlar, Bailo, and Galas, assaulted Seguin inside Denlar's house "in the course of committing a larceny." A person who aids or abets another person in the commission of a crime "shall be punished as if he had directly committed such offense." MCL 767.39; *People v Foster*, 319 Mich App 365, 387; 901 NW2d 127 (2017), lv pending.

Keller argues that the evidence did not support a robbery because Seguin was not subdued in the fight inside the house, no one showed him a pistol, and no one went into his pockets or took money from him. Keller also argues that Seguin's testimony was inherently incredible because the circumstances indicated that Seguin was not frightened, and there was no physical evidence that anyone fired a gun outside the house. As previously indicated, it was not necessary to prove a completed larceny to establish the offense of unarmed robbery. Keller's emphasis on the lack of physical evidence establishing the use of a firearm is misplaced because the jury acquitted Keller of felonious assault and felony-firearm, and convicted him only of the

---

[2] To the extent that this Court suggested that an actual taking of property is required, it is inconsistent with the 2004 amendment of MCL 750.530, and contrary to our Supreme Court's decision in *Williams*.

lesser offense of unarmed robbery. Although the jury evidently was not convinced beyond a reasonable doubt that Keller or any of his associates were armed, they were free to believe Seguin's testimony regarding the use of force inside the house.

According to Seguin, the four men confronted him in the corner of the room, Bailo jumped on top of him, and one of the men commented, "Run his pockets." Keller argues that Seguin was not afraid during the episode and effectively defended himself and prepared to fight. However, MCL 750.530(1) provides that a robbery is committed if the defendant, while "in the course of committing a larceny," "uses force *or* violence against any person who is present, *or* who assaults *or* puts the person in fear" "in the course of committing a larceny." (Emphasis added.) "In general, 'or' is a disjunctive term, indicating a choice between two alternatives, i.e., a unit or a portion of the common elements." *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 148; 783 NW2d 133 (2010). Thus, "put[ting] the person in fear" is just one type of conduct that can establish robbery when the actor engages in the conduct "in the course of committing a larceny." Regardless of whether Seguin was actually put in fear, Seguin's testimony that Bailo jumped on his back, that Denlar told him that all four men had guns, and that one of the men commented "run his pockets," viewed in a light most favorable to the prosecution, was sufficient to prove beyond a reasonable doubt that an assault or force or violence was used against Seguin in the course of attempting to commit a larceny, i.e., take his money. This testimony was sufficient to prove a robbery within the meaning of MCL 750.530. The credibility of Seguin's testimony was for the jury to resolve. *McRunels*, 237 Mich App at 181.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Keller next argues that he was denied the effective assistance of counsel at trial. Because Keller did not raise a claim of ineffective assistance of counsel in a motion for a new trial or request for a *Ginther*[3] hearing, our review of this issue is "limited to mistakes apparent on the lower court record." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016). "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *Id*. at 187. To establish ineffective assistance of counsel, a defendant must show that "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *Id*. at 188 (citations omitted).

Keller argues that trial counsel was ineffective for failing to adequately investigate and present a defense, and for not pursuing a strategy of distinguishing Keller's conduct and circumstances from the actions of his codefendants. We disagree.

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

NW2d 94 (2002). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004)(citation omitted). A trial attorney's alleged failure to call a witness or adequately investigate and present a defense does not constitute ineffective assistance unless it deprives the defendant of a substantial defense. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (citation omitted).

The record discloses that trial counsel's strategy was to minimize the seriousness of the incident and to portray Seguin's testimony as exaggerated and incredible. In his closing argument, counsel stated that the incident "sounded like . . . a bunch of boys fightin' " and "a bunch of silly kids, young men, kids, fighting." Counsel stated that Seguin fought "with the littlest guy there" and then "beat the door up." Counsel attacked Seguin's testimony, stating that he "was all over the place, doesn't want to answer questions." He argued that Seguin's story did not make sense because defendants would not risk shooting him over a dispute of $28 or $30. Counsel also highlighted the absence of evidence corroborating Seguin's testimony about a shooting, emphasizing that no neighbors came outside to see what was happening or reported a shooting when the police knocked on doors. In addition, no shell casings were found.

Keller complains that defense counsel failed to investigate witnesses but does not specify what evidence or witnesses counsel should have found and introduced to bolster a defense. In the absence of any record evidence that further investigation would have produced favorable evidence, there is no basis for concluding that trial counsel's investigation was objectively unreasonable or that Keller was deprived of a substantial defense. Moreover, trial counsel used the absence of witnesses to Keller's advantage. He implied that the police investigation was inadequate because the officers did not obtain the names of persons at a nearby bonfire, which in turn prevented him from identifying and calling them as witnesses. Counsel also argued that defendants' ability to defend themselves was impaired because they were not arrested until a month after the incident. Criticizing the police investigation and establishing a logical nexus between the allegedly inadequate investigation and reasonable doubt about Keller's guilt was a reasonable strategy that we will not second guess. *Davis*, 250 Mich App at 368. Indeed, this strategy was partially successful because counsel's attacks on the adequacy of the police investigation and the absence of corroborating evidence for any shooting evidently persuaded the jury to acquit Keller of the felonious assault and felony-firearm charges.

Keller criticizes trial counsel for failing to pursue a strategy of distinguishing Keller's actions from those of his codefendants. Keller maintains that all of the defendants were in different positions, but he does not discuss how his position was distinct from Bailo's and Denlar's positions. Keller does not explain how counsel could have presented a more effective defense by contrasting Keller from the other members of the group. Seguin testified that Keller tried to block the door to prevent Seguin from leaving. He demonstrated Keller's actions in clenching his fist and making a punching motion. Most significantly, Seguin testified that it was Keller who obtained and fired the gun. In light of this evidence, it was not unreasonable for counsel to refrain from focusing on Keller individually. Moreover, a strategy of arguing that Keller was less culpable than his codefendants would not have been legally sound because Michigan's statutes "do not apportion criminal liability based on a codefendant's degree of participation in the crime." *Foster*, 319 Mich App at 387. Considering the circumstances,

-5-

attacking Seguin's credibility, minimizing the apparent danger to Seguin, and emphasizing the absence of corroborative evidence were reasonable strategies. Keller has failed to overcome the presumption of counsel using sound trial strategy, and has not shown that counsel's actions deprived him of a substantial defense.

## C.  SENTENCING

Keller argues that he is entitled to resentencing because the trial court erred in scoring offense variables 3, 8, and 10 of the sentencing guidelines, and violated his rights under the Sixth Amendment by relying on judge-found facts to score the guidelines. Keller preserved his evidentiary challenges to the scoring of the guidelines with appropriate objections at sentencing. However, he did not raise a Sixth Amendment argument below, leaving that issue unpreserved. In reviewing a defendant's claim that the trial court assigned an improper score to an offense variable, this Court reviews for clear error the trial court's factual determinations, which must be supported by a preponderance of the evidence. *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). The trial court's interpretation and application of the guidelines is reviewed de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). The issue whether a defendant's sentence violates the Sixth Amendment is reviewed de novo as a question of constitutional law. *People v Lockridge*, 498 Mich 358, 373; 870 NW2d 502 (2015). But, an unpreserved Sixth Amendment claim is reviewed for plain error affecting the defendant's substantial rights. *Id.* at 392-393; *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999).

Initially, we reject Keller's argument that the trial court violated his Sixth Amendment rights by relying on judge-found facts to score the offense variables. In *Lockridge*, 498 Mich at 364, our Supreme Court held that "the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by *Alleyne v United States*, 570 US 99; 133 S Ct 2151; 186 L Ed 2d 314 (2013), applies to Michigan's sentencing guidelines and renders them constitutionally deficient" because of "the extent to which the guidelines *require* judicial fact-finding beyond the facts admitted by the defendant or found by the jury to score offense variables that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." To remedy this violation, the Court severed MCL 769.34(2) to the extent that it makes a sentencing guidelines range based on judge-found facts mandatory, and held that a guidelines range calculated in violation of *Apprendi* and *Alleyne* is advisory only. *Lockridge*, 498 Mich at 364-365. As this Court explained in *People v Biddles*, 316 Mich App 148, 158; 896 NW2d 461 (2016), "[t]he constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a *mandatory* minimum sentence range." (Emphasis in original.) "*Lockridge* remedied this constitutional violation by making the guidelines *advisory*, not by eliminating judicial fact-finding." *Id.* Indeed, the Court in *Lockridge* expressly stated that its holding "does nothing to undercut the requirement that the highest number of points possible *must be* assessed for all OVs, whether using judge-found facts or not." *Lockridge*, 498 Mich at 392 n 28 (emphasis in the original). In this case, Keller was sentenced approximately nine months after *Lockridge* was decided. A trial court is presumed to know the law unless the contrary is clearly shown. *People v Alexander*, 234 Mich App 665, 675; 599 NW2d 749 (1999). Keller does not contend that the trial court was unaware of *Lockridge* and nothing in the record suggests that the court did not understand that the guidelines were advisory. Accordingly, there

is no merit to Keller's argument that the trial court violated his Sixth Amendment rights by relying on judge-found facts to score the guidelines.

Keller also argues that his sentence is unreasonable under *Lockridge*. In *Lockridge*, the Court held that "[a] sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Lockridge*, 498 Mich at 392. This Court reviews the reasonableness of a trial court's departure sentence for an abuse of discretion, applying the principle-of-proportionality test set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). *People v Steanhouse*, 500 Mich 453, 471, 902 NW2d 327 (2017). In this case, however, the trial court did not impose a departure sentence, but instead sentenced Keller within the applicable guidelines range as determined by the court. "If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." MCL 769.34(10). "*Lockridge* did not alter or diminish MCL 769.34(10)." *Schrauben*, 314 Mich App at 196 n 1. Thus, "[w]hen a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *Id.* at 196. Conversely, when a scoring error affects the appropriate guidelines range, a defendant is entitled to resentencing. *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006). Accordingly, Keller's entitlement to sentencing relief depends on whether the trial court made a scoring error that affected his guidelines range.

The trial court scored the guidelines for Keller's conviction of unarmed robbery, which is a Class C offense, MCL 777.16y, governed by the sentencing grid at MCL 777.64. Keller received a total of 35 offense variable (OV) points, placing him in OV Level IV (35 - 49 points). His prior record variable (PRV) score of 30 points placed him in PRV Level D (25 - 49 points). These scores resulted in a sentencing guidelines range of 36 to 71 months. MCL 777.64. Because Keller received the minimum number of OV points necessary for placement in OV Level IV, and placement in a lower OV Level will result in a reduced guidelines range, any error in the scoring of the challenged offense variables will require resentencing.

Keller first argues that the trial court erred in assessing five points for OV 3, physical injury to victim. Keller erroneously states that five points is the appropriate score where a victim sustained bodily injury requiring medical treatment. It is undisputed that Seguin did not obtain medical treatment for any injury. However, MCL 777.33(1)(e) states that five points is the proper score where "[b]odily injury *not* requiring medical treatment occurred to a victim." (Emphasis added.) Conversely, 10 points is the appropriate score when medical treatment is required. MCL 777.33(1)(d). Seguin testified that he sustained scratches and abrasions when he tripped over debris as he was trying to escape from defendants. A responding police officer testified that these injuries were visible on Seguin. Because a preponderance of the evidence showed that Seguin sustained a bodily injury not requiring medical treatment, the trial court properly assessed five points for OV 3.

OV 8 is "victim asportation or captivity." The trial court is directed to assess 15 points where "[a] victim was asported to another place of greater danger" or "held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). Zero points are to be scored when "[n]o victim was asported or held captive." MCL 777.38(1)(b). The trial court determined that

-7-

Seguin was held captive when defendants confiscated his car keys, thereby preventing him from leaving in his truck. We agree with Keller that such evidence does not establish that Seguin "was held captive." The evidence indicated that Seguin was able to leave the house and run away. Indeed, by leaving, Seguin prevented defendants from committing a completed act of larceny of his money. Seguin did testify that Keller attempted to block the door inside the house but this did not prevent Seguin from leaving. The statute states that 15 points are to be scored if "[a] victim . . . *was held captive* beyond the time necessary to commit the offense." MCL 777.38(1)(a)(emphasis added). The phrase "*was* held captive" refers to captivity that was actually effected, not captivity that is merely attempted or contemplated. Moreover, any captivity must be "beyond the time necessary to commit the offense." Seguin was able to flee before Keller and the other men were able to take his money. In addition, the fact that defendants prevented Seguin from leaving in his vehicle does not equate with captivity. It merely establishes that Seguin was unable to leave in his truck. Seguin otherwise was able to walk or run away, and in fact did so, after remaining outside and speaking with one of the defendants for a lengthy period of time. Because the evidence did not show that Seguin was "held captive," the trial court erred in assessing 15 points for OV 8.

The trial court assessed 15 points for OV 10, which is appropriate when a defendant exploits a vulnerable victim and "[p]redatory conduct was involved." MCL 777.40(1)(a). "Predatory conduct" is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). " 'Vulnerability' means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). In *People v Cannon*, 481 Mich 152, 158; 749 NW2d 257 (2008), our Supreme Court explained "that points should be assessed under OV 10 only when it is readily apparent that a victim was 'vulnerable,' i.e., was susceptible to injury, physical restraint, persuasion, or temptation." The Court stated that to qualify as predatory conduct, the conduct "must have occurred before the commission of the offense." *Id*. at 160. The conduct also must have been " 'directed at a victim' before the offense was committed." *Id*. The Court set forth three analytical questions in determining whether 15 points are properly assigned under OV 10:

> (1) Did the offender engage in conduct before the commission of the offense?
>
> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?
>
> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct?
>
> If the court can answer all these questions affirmatively, then it may properly assess 15 points for OV 10 because the offender engaged in predatory conduct under MCL 777.40. [*Cannon*, 481 Mich at 161-162.]

In *People v Huston*, 489 Mich 451; 802 NW2d 261 (2011), the defendant and his co-felon waited in a dark parking lot. When a solitary woman came to her car, the defendant and his co-felon pointed BB guns at her and demanded her purse, wallet, and car keys. The co-

defendant pushed her to the ground and cut the purse from her shoulder. They fled in the victim's vehicle. *Id*. at 455. Our Supreme Court held that the "defendant's preoffense conduct of predatorily lying in wait, armed, and hidden from view" constituted predatory conduct under OV 10. *Id.* at 463. Our Supreme Court disagreed with this Court's conclusion "that the victim was not 'vulnerable' because there was nothing in the record to indicate that she suffered from an *inherent* or *personal* vulnerability." *Id*. at 464. The Supreme Court stated:

> In contrast to subdivisions (b) and (c), subdivision (a) does not list any specific characteristics, relationships, or circumstances of the victim. Rather, that subdivision merely requires that '[p]redatory conduct was involved' in order to assess 15 points for OV 10. MCL 777.40(1)(a). [*Huston*, 489 Mich at 465.]

The Court concluded that the statute "does not mandate that this 'susceptibility' be *inherent* in the victim. Rather, the statutory language allows for susceptibility arising from external circumstances as well." *Id*. at 466.

Here, Seguin testified that he was invited to Denlar's house, not suspecting that the defendants intended to assault him in order to extract the wages they believed they were due. They directed Seguin to the corner of the room, furthest from the exterior door to the house. This conduct made Seguin more susceptible to physical restraint. When Seguin attempted to leave, the defendants were already in position to forcibly detain him. This conduct is comparable to the conduct in *Huston*, in which the defendant waited at a location in a parking lot, anticipating an opportunity to rob a solitary victim. Thus, the evidence was sufficient to establish predatory conduct by a preponderance of the evidence. Accordingly, the trial court did not err in assessing 15 points for OV 10.

Although the trial court did not err in scoring OV 3 or OV 10, it erroneously assigned 15 points for OV 8, and the scoring error affects Keller's appropriate guidelines range. Therefore, we vacate Keller's sentence and remand for resentencing. *Francisco*, 474 Mich at 89.

## II. DOCKET NO. 335254 (DEFENDANT DENLAR)

### A. SENTENCING

### 1. SCORING OF THE GUIDELINES

Denlar argues that he is entitled to resentencing because the trial court erred in scoring OV 8 and OV 10 of the sentencing guidelines. The trial court scored the guidelines for Denlar's conviction of unarmed robbery, which is a Class C offense, MCL 777.16y, governed by the sentencing grid at MCL 777.64. Denlar received a total of 35 offense variable points, placing him in OV Level IV (35 - 49 points). His PRV score of 25 points placed him in PRV Level D (25 - 49 points). These scores resulted in a sentencing guidelines range of 36 to 71 months. MCL 777.64. Because Denlar received the minimum number of OV points necessary for placement in OV Level IV, and placement in a lower OV Level will result in a reduced guidelines range, any error in the scoring of either OV 8 or OV 10 will reduce Denlar's guidelines range, and thus require resentencing. *Francisco*, 474 Mich at 89.

Our analysis of the scoring of OV 8 in Keller's appeal in Docket No. 334123 applies equally to Denlar. As explained earlier, the evidence did not show that Seguin was "held captive" while inside Denlar's house. The efforts to block Seguin from leaving were not successful and he was able to run out of the house before Denlar and the others could take his money. The statutory language "was held captive" refers to captivity that was actually effected, not captivity that is merely attempted or contemplated. In addition, the efforts to prevent Seguin from leaving in his vehicle do not equate with captivity. They merely establish that Seguin was unable to leave in his truck. Seguin otherwise was able to walk or run away and, in fact, did so after staying outside for a relatively long period of time and speaking with one of the defendants. Because the evidence did not show that Seguin was "held captive," the trial court erred in assessing 15 points for OV 8.

Denlar also argues that the trial court erred in assessing 15 points for OV 10, which is appropriate where there is exploitation of a vulnerable victim and "predatory conduct was involved." MCL 777.40(1)(a). Denlar argues that Seguin was not a vulnerable victim, and further, Denlar was not individually involved in any preoffense conduct. We disagree.

Because MCL 777.40 does not contain language mandating that all offenders in multiple-offender situations be assessed the same number of points, the trial court was not permitted to assess points for Denlar for OV 10 on the basis of his co-offenders' conduct. *People v Gloster*, 499 Mich 199, 206; 880 NW2d 776 (2016). We conclude, however, that the evidence supports the trial court's finding that Seguin was a vulnerable victim and that Denlar was individually involved in predatory conduct designed to exploit that vulnerability.

As explained earlier, the evidence showed that Denlar invited Seguin to his house and, after Seguin arrived, he was directed to a corner of the room, furthest from the exterior door to the house, which made him more susceptible to physical restraint. Seguin testified that Galas sat by the door, Keller sat to Galas's right, Denlar sat on the couch, and Bailo sat across from the entrance, on the other couch. The evidence that Seguin was directed to a corner position while the other four men took surrounding positions supported a finding that all four men contributed to Seguin's susceptibility to physical restraint. Moreover, the offense occurred at Denlar's house, and it was Denlar who lured Seguin to the house by inviting him there under the pretext of a social visit. This allowed Denlar and the other men to control the location. Seguin's belief that he was going to Denlar's house for a social gathering with people he knew made him more vulnerable by leading him to believe that he had no reason to be concerned for his safety by accepting Denlar's invitation, and no reason to be cautious after arriving at the house. A preponderance of the evidence supports a finding that Denlar and the other men exploited Seguin's vulnerability for the purpose of victimizing him, and that preoffense conduct was involved when Denlar extended the social invitation to Seguin to lure him to his house and then took up a surrounding position that required Seguin to occupy the position in the corner, making him more susceptible to physical restraint by the surrounding group. Accordingly, the trial court did not err in assessing 15 points for OV 10.

Although the trial court did not err in scoring OV 10, it erroneously assigned 15 points for OV 8, and this scoring error affects Denlar's appropriate guidelines range. Therefore, we vacate Denlar's sentence and remand for resentencing. *Francisco*, 474 Mich at 89.

-10-

## 2. ACCURACY OF THE PRESENTENCE REPORT

Denlar challenges the accuracy of information in the presentence report (PSIR). Denlar correctly observes that information found to be inaccurate or irrelevant must be stricken from the PSIR. MCL 771.14(6); *People v Lloyd*, 284 Mich App 703, 705-706; 774 NW2d 347 (2009). Denlar argues that the presentence report inaccurately states that he was "originally charged with Armed Robbery, Unarmed Robbery, Felonious Assault, and Felony-Firearm," but only convicted of unarmed robbery. He argues that this information is incorrect because it was codefendant Keller who was charged with felonious assault and felony-firearm. We disagree. Although Denlar did not proceed to trial on charges of felonious assault and felony-firearm, he was "originally charged" with those offenses. The charges were dismissed as to Denlar at the preliminary examination. Thus, Denlar has not shown that the PSIR was inaccurate in this regard.

Denlar also complains that it was improper to attach the police report to the PSIR. The Agent's Description of the Offense in the PSIR indicates that it is based on information obtained from the police report. A copy of the police report was attached to the PSIR. Denlar's reliance on *People v Rockey*, 237 Mich App 74; 601 NW2d 887 (1999), in support of his argument that the report should not have been attached is misplaced. In *Rockey*, this Court held that the trial court erred when it relied on unproven facts contained in a police report, which were inconsistent with testimony at trial, to impose a departure sentence. *Id.* at 80-81. In this case, Denlar does not argue that any of the information in the police report is inaccurate and the report does not include allegations not supported by the testimony at trial. Accordingly, Denlar has not shown that it was improper to attach the report to the PSIR. To the extent that Denlar believes the police report is unnecessary because it is duplicative of the agent's description of the offense, he may challenge the relevancy of that document at resentencing.

## B. GREAT WEIGHT OF THE EVIDENCE

Denlar argues that he is entitled to a new trial because the jury's verdict is against the great weight of the evidence. Because Denlar failed to preserve this issue by timely moving for a new trial, we review this issue for plain error affecting Denlar's substantial rights. *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014).

A new trial may be granted if a jury's verdict is against the great weight of the evidence. *People v Herbert*, 444 Mich 466, 475; 511 NW2d 654 (1993), overruled in part on other grounds in *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998). The test for whether a verdict is against the great weight of the evidence is "whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001).

Denlar argues that Seguin's testimony was patently incredible. He contends that a jury note asking about the availability of a lesser charge indicates that the jury did not believe Seguin's testimony. Generally, "conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial." *People v Bosca*, 310 Mich App 1, 13; 871 NW2d 307 (2015), quoting *Lemmon*, 456 Mich at 643. Exceptional circumstances are required for a new trial to be granted based on a witness's credibility. Exceptional circumstances

involve testimony that contradicts "indisputable physical facts or laws," or that is "so inherently implausible that it could not be believed by a reasonable juror," or that was "seriously impeached in a case that was marked by uncertainties and discrepancies." *Bosca*, 310 Mich App at 13, quoting *People v Galloway*, 307 Mich App 151, 167; 858 NW2d 520 (2014) (quotation marks omitted), rev'd in part on other grounds 498 Mich 902 (2015).

Although Denlar asserts that Seguin's allegations "were so inherently implausible that they should not have been believed," he does not explain the basis for this conclusory statement. A party "may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *Matuszak*, 263 Mich App at 59, quoting *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001). Seguin testified that he was invited to Denlar's home. The men who were there, whom he knew, argued with him about some withheld wages, causing him to become uncomfortable and concerned about his safety. When he got up to leave, Bailo assaulted him. While Seguin was fighting Bailo, Denlar talked about "running" his pockets, which Seguin understood to mean take his money. Seguin's testimony was not seriously impeached, it was not inherently implausible, and it did not contradict "indisputable physical facts or laws." The credibility of Seguin's testimony properly was left for the jury to resolve. Denlar's reliance on a jury note asking if other lesser offenses were available does not indicate that the jury's verdict is against the great weight of the evidence.

Contrary to what Denlar asserts, the note does not demonstrate that the jury did not believe Seguin's testimony. First, the jury did not specify which defendant or defendants were the subject of its request. Second, there is no reasonable basis for believing that if the jury did not believe Seguin, it would have still convicted Denlar of unarmed robbery. Rather, the appropriate verdict would have been to find Denlar not guilty. We conclude that the jury's verdict is not against the great weight of the evidence.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL – JURY INSTRUCTIONS

Denlar argues that defense counsel was ineffective for failing to request a lesser offense jury instruction on larceny from a person. Because Denlar did not raise this issue in a motion for a new trial or request for a *Ginther* hearing in the trial court, our review of this issue is "limited to mistakes apparent on the lower court record." *Solloway*, 316 Mich App at 188.

A court is only permitted to instruct on necessarily included lesser offenses, not cognate lesser offenses. *People v Reese*, 466 Mich 440, 446; 647 NW2d 498 (2002); *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002). "A necessarily lesser included offense is an offense whose elements are completely subsumed in the greater offense." *People v Mendoza*, 468 Mich 527, 540; 664 NW2d 685 (2003). "Necessarily included lesser offenses are distinguishable from cognate offenses," which "share several elements and are of the same class or category as the greater offense, but contain elements not found in the greater offense." *People v Wilder*, 485 Mich 35, 41; 780 NW2d 265 (2010). "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *Cornell*, 466 Mich at 357.

A person is guilty of larceny from the person by "stealing from the person of another." MCL 750.357. To prove a larceny from a person, it is necessary that property be taken from the victim's physical possession or immediate proximity. *People v Smith-Anthony*, 494 Mich 669, 682-684; 837 NW2d 415 (2013). However, the robbery statute is not so limited. It contains its own definition of "in the course of committing a larceny," which is defined as "includ[ing] acts that occur in an attempt to commit the larceny." MCL 750.530(2). Under this definition, "an incomplete larceny is now sufficient to sustain a conviction under the robbery or armed robbery statutes, respectively." *Williams*, 491 Mich at 172. Because larceny from a person requires an actual taking of property, but a completed larceny is not necessary to prove a robbery, larceny from a person does not qualify as a necessarily included lesser offense of robbery. *Mendoza*, 468 Mich at 540. Therefore, because a court is only permitted to instruct on necessarily included lesser offenses, not cognate lesser offenses, *Reese*, 466 Mich at 446, the trial court would not have been permitted to instruct the jury on larceny from a person even if counsel had requested the instruction.

In addition, a rational view of the evidence did not support an instruction on larceny from a person. There was no evidence of a completed larceny of money. There also was no evidence that any defendant took anything in immediate proximity to the victim. Seguin did not know how defendants obtained his truck key, but in any event the robbery charge was based on an attempted larceny of money, not the vehicle.

For these reasons, any request for a jury instruction on larceny from a person would have been futile. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Erickson*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## D. PROSECUTOR'S CONDUCT

Denlar argues that multiple instances of misconduct by the prosecutor denied him a fair trial. Because there was no objection to the prosecutor's conduct at trial, these claims are unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial (i.e., whether prejudice resulted). *Bennett*, 290 Mich App at 475. We review claims of misconduct on a case-by-case basis and examine the prosecutor's conduct in context. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

Denlar argues that the prosecutor improperly bolstered Seguin's credibility by commenting on Seguin's testimony adopting as true prior statements that defense counsel had initially introduced for impeachment. After the prior statements were introduced by defense counsel for impeachment, Seguin agreed that they refreshed his memory and testified that the prior statements accurately reflected his memory of the offense. Denlar's counsel argued in closing argument that Seguin's inability to remember these facts indicated that his testimony was not truthful. The prosecutor argued in rebuttal that if Seguin were fabricating his accusations, he would remember the details of his false allegations. We disagree with Denlar that the prosecutor's argument improperly vouched for Seguin's credibility.

"A prosecutor may not vouch for the credibility of his witnesses by suggesting that he has some special knowledge of the witnesses' truthfulness." *Seals*, 285 Mich App at 22. The prosecutor may, however, "argue from the facts that a witness should be believed." *Id*. (citation and quotation marks omitted). The prosecutor's argument did not exceed these permissible bounds. The prosecutor never intimated that he had any special knowledge of Seguin's credibility. The prosecutor was responding to Denlar's argument that Seguin's failure to remember which person made the remarks about pistols and pockets indicated that he was lying. The prosecutor turned Denlar's argument around by stating that if Seguin were fabricating accusations, he would not have confused or forgotten these details. Just as defense counsel was permitted to argue that the change in Seguin's testimony showed that he was not credible, the prosecutor was permitted to argue that the same circumstances actually showed that Seguin was credible. "Taken in context, these statements were a fair comment on the evidence and were responsive to defendant's arguments." *People v Thomas*, 260 Mich App 450, 456; 678 NW2d 631 (2004). The prosecutor's conduct was not improper.

Denlar also argues that the prosecutor acted improperly in citing the prior inconsistent statements that Denlar had introduced to impeach Seguin to argue that Seguin's memory was refreshed. Denlar argues that the prosecutor improperly transformed the impeachment testimony into inadmissible hearsay evidence to prove that it was Denlar who made the threat about the group having pistols, and that it was Denlar who directed the others in the group to search Seguin's pockets. "Under MRE 801(c), 'hearsay' is defined as 'a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' " *Solloway*, 316 Mich App at 198-199. "Hearsay evidence is inadmissible unless it falls within one of the exceptions listed in the Michigan Rules of Evidence." *Id*.; MRE 802. MRE 803(5) provides a hearsay exception for

> [a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Denlar cites no authority for the proposition that a prosecution witness's adoption of a prior inconsistent statement introduced by a defendant for impeachment cannot be used as substantive evidence by the prosecution if the witness's memory is refreshed and the witness agrees that the prior statement accurately describes the witness's memory of a fact previously forgotten. Denlar's argument that it was improper for the prosecutor to seize upon evidence that he introduced is inconsistent with the principle that "[a] defendant will not be heard to introduce and use evidence to sustain his theory at trial and then argue on appeal that the evidence was prejudicial and denied him a fair trial." *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001).

Denlar also argues that the prosecutor improperly appealed to the jury's emotions and sympathies by making the following remarks during rebuttal argument:

Now, they talk a lot about this witness's credibility, his demeanor, how he seemed agitated, angry, mad.

Wouldn't you be mad, too, if someone assaulted you, tried to take your money, and took your truck, took your tools, all his company – you heard him say, all his company information, all his files, his brief case were in there.

It cost him ten thousand dollars' worth of money. It cost him a month without a truck. He couldn't do his job.

Wouldn't you be mad if that happened to you, too? Wouldn't you get a little agitated, if you're up here, and you have three different people, whose job it is to try to make you look like a liar, questioning every little word you say?

Wouldn't that make you a little bit agitated, as well?

A prosecutor is generally given "great latitude regarding his or her arguments and conduct at trial." *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010). "[P]rosecutors may use 'hard language' when it is supported by evidence and are not required to phrase arguments in the blandest of all possible terms." *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). "Emotional language may be used during closing argument and is an important weapon in counsel's forensic arsenal." *Id*. at 679 (citation omitted). But "[a] prosecutor may not appeal to the jury to sympathize with the victim . . . . Nor may a prosecutor urge the jury to convict as part of its civic duty or on the basis of its prejudices." *Unger*, 278 Mich App at 237. In this case, the prosecutor's arguments were not an appeal to the jury's emotions, but an argument explaining why Seguin's demeanor was not unusual for a person who had sustained substantial material loss and whose credibility was under attack in his attempt to vindicate that loss. This argument was responsive to Denlar's argument that Seguin was evasive and uncooperative during cross-examination. Accordingly, the remarks were not improper.

Denlar also argues that the prosecutor improperly denigrated defense counsel by stating in closing argument, "Wouldn't you get a little agitated, if you're up here, and you have three different people, whose job it is to try to make you look like a liar, questioning every little word you say?" A prosecutor "may not suggest that defense counsel is intentionally attempting to mislead the jury." *Fyda*, 288 Mich App at 461. The prosecutor's remarks were not directed at defense counsel, but were made in the context of responding to the defendants' arguments that Seguin's demeanor should be interpreted as evidence of dishonesty. Arguing that Seguin's agitation was attributable to rigorous cross-examination did not equate suggesting that defense counsel was intentionally trying to mislead the jury.

Denlar next complains that Seguin impermissibly referred to the defendants as "suspects." This reference occurred when, on direct examination by the prosecutor, Seguin stated that while he was fighting Bailo, he looked around the room "because there was the other three suspects" present. There is no indication that the prosecutor encouraged Seguin to use the word "suspects" in reference to defendants. Although it is generally improper for a witness to comment on another witness's credibility, or to express an opinion about a defendant's guilt or innocence, *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014); *People v Buckey*, 424

Mich 1, 17; 378 NW2d 432 (1985), this isolated reference to defendants as "suspects" cannot reasonably be construed as an improper expression of an opinion of the defendants' guilt. Moreover, the jury knew that the defendants were suspects; otherwise they would not be on trial. Denlar has not shown any misconduct by the prosecutor related to this issue.

Denlar also complains that Seguin impermissibly stated that he had previously seen guns at Denlar's house. On cross-examination by defense counsel, when asked if any of the perpetrators showed him a pistol, Denlar replied, "Not at that point" and added, "I'd seen pistols there, previously." There is nothing in the record to indicate that the prosecutor knew that Seguin would volunteer the information about previously seeing guns in the home. Indeed, the response was made as part of a non-responsive answer to *defense counsel's* question. There is no basis ascribing the comment to prosecutorial misconduct.

In sum, the record does not support Denlar's claims of prosecutorial misconduct. And because Denlar has not established any individual errors by the prosecutor, his claim that the cumulative effect of the prosecutor's conduct denied him a fair trial must also fail. *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

Finally, because Denlar's claims of misconduct are without merit, he cannot establish that defense counsel was ineffective for failing to object to the prosecutor's conduct at trial. Counsel is not required to make a meritless objection. *Erickson*, 288 Mich App at 201.

We affirm defendants' convictions, but vacate defendants' sentences and remand for resentencing. We do not retain jurisdiction.


/s/ Thomas C. Cameron
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher